# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES of AMERICA, | : | **Criminal Action No. 11-277 (SRC)** |
| | : | |
| Plaintiff, | : | |
| | : | **OPINION & ORDER** |
| v. | : | |
| | : | |
| MICHAEL F. DURANTE, | : | |
| | : | |
| Defendant. | : | |
| | : | |
| | : | |

**CHESLER, District Judge**

This matter comes before the Court on the Government's motion to quash the subpoena for testimony and documents issued by Defendant Michael Durante to Assistant United States Attorney Anthony Mahajan ("Mahajan"). This Court conducted five days of evidentiary hearings related to this motion. For the reasons stated below, the motion will be granted.

This motion concerns a subpoena issued on February 21, 2012, commanding Mahajan, the Assistant United States Attorney prosecuting Defendant in this criminal case, to appear to testify and produce documents. In brief, this subpoena arises in the context of a dispute in this case over allegations that the Government failed to timely disclose a specific piece of evidence, the January 11, 2010 recording of Defendant Durante and a confidential informant, known as the "Rothbart recording."[1] Defendant contends, and this Court has informally indicated, that this

---

[1] The recording contains the contents of a conversation between Defendant and Rothbart in which Rothbart unsuccessfully tried to obtain a prescription for a controlled substance from Defendant. For unknown reasons, the recording device was not turned off after this meeting and continued to record conversations between Rothbart and task force investigators following Rothbart's meeting with Defendant. The recording was ultimately and belatedly provided to Defendant's attorney. It appears that, initially, the Government only provided the portions of the

recording contains exculpatory evidence and is <u>Brady</u> material.

On February 23, 2012, at a status conference, Defendant first asked this Court to investigate the circumstances surrounding the Government's handling of the Rothbart recording and its disclosure to the defense.  This Court granted Defendant's application and Ordered that an evidentiary hearing be conducted on February 28, 2012.  The Court conducted evidentiary hearings on February 28, February 29, March 1,[2] and March 6, 2012.[3]  On March 28, 2012, Defendant sent the United States Attorney the subpoena, accompanied by a letter.[4]  On April 13, 2012, the Government filed the instant motion to quash the subpoena.

Since then, this Court held an additional day of evidentiary hearing, on May 21, 2012, and Ordered supplementary briefing on this motion.

The threshold question is: what is Defendant's legal theory supporting issuance of the subpoena?  Defendant's briefs do not answer this question clearly.  This Court clearly has the

---

recording in which Rothbart and Defendant participated.  A few days later, Defendant was provided with the full recording.  Upon reviewing the full recording, it was discovered that substantial portions of the recording following Rothbart's meeting with Durante were inaudible because the investigating officer, TFO Izzo, had damaged the compact disk media while using a pen to inscribe information onto the disks.  The only existing CDs are both damaged.  Defendant's expert witness has testified that the damage was intentionally caused.

[2] It was at the hearing on March 1, 2012 that Defendant first requested that Mahajan testify on the subject of the Rothbart recording.

[3] At these hearings, this Court heard testimony from witnesses John Del Re, Philip Streicher, Steven Fischer, Paul Ginsberg, Michelle Dyer, Gino Izzo, and Andre Domando.

[4] Defendant seeks this discovery pursuant to the applicable <u>Touhy</u> regulations.  <u>See</u> <u>United States ex rel. Touhy v. Ragen</u>, 340 U.S. 462 (1951); 28 C.F.R. § 16.23.  It is unclear whether Defendant has fully complied with all applicable <u>Touhy</u> regulations, but this Court need not reach this issue.

power to quash a subpoena, for a trial or hearing.  See, e.g., Bowman Dairy Co. v. United States, 341 U.S. 214, 221 (1951), and its progeny.  In Bowman Dairy, the Supreme Court held that a Rule 17 subpoena may not be used as a "fishing expedition."  Primarily, Defendant appears to invoke this Court's supervisory powers, within the meaning of United States v. Hasting, 461 U.S. 499, 505 (1983).  Defendant contends that the Court should use its supervisory powers to both investigate and sanction Mahajan for what Defendant contends is prosecutorial misconduct in regard to the Rothbart recording.

To get quickly to the bottom line, there is no dispute that, at this point, the Government has turned over to Defendant the Rothbart recording and any related evidence.  There is also no dispute that the Government did not disclose the recording in a timely fashion, and that the recording was physically damaged by the actions of Government employees.  There is also no dispute that the transaction at which the Rothbart recording was made will not be part of the Government's case against Defendant.  The remaining question for the Court on this motion, then, is whether to quash the subpoena, which, in sum, seeks more information from the Assistant United States Attorney prosecuting Defendant about the delayed disclosure of the Rothbart recording, or whether the subpoena should be allowed in order to facilitate the Court's supervision of the alleged prosecutorial misconduct.

In short, this Court has conducted evidentiary hearings to investigate Defendant's allegations of prosecutorial misconduct and concludes that no further investigation is necessary. Defendant seeks the subpoena to continue the investigation into the delay in disclosing the Rothbart recording – an investigation which this Court has already pursued in five days of evidentiary hearings – yet Defendant's briefs do not provide a legal justification for further

investigation.  Again, Defendant has not answered this crucial question: what is the legal basis for allowing the subpoena?  The investigation conducted by this Court has not discovered new evidence of prosecutorial misconduct that might justify continuing an inquiry that has already been exhaustive.

As noted, Defendant relies on the Court's discretion to exercise its supervisory powers to deal with alleged prosecutorial misconduct.  The most apposite Third Circuit case is Virgin Islands v. Fahie, 419 F.3d 249, 252 (3d Cir. 2005), in which the Third Circuit considered how courts might respond to nondisclosure of exculpatory evidence in a criminal case.  Of greatest interest is that the Third Circuit considered the Court's authority to sanction for constitutional violations under Brady, as well as its authority to sanction using its supervisory powers, pursuant to Hasting.  Id. at 257.  The Third Circuit concluded:

> [T]o merit the ultimate sanction of dismissal, a discovery violation in the criminal context must meet the two requirements of prejudice and willful misconduct, the same standard applicable to dismissal for a Brady violation. Accordingly, we do not expect that trial courts will dismiss cases under their supervisory powers that they could not dismiss under Brady itself.

Id. at 259.  Fahie makes clear that, to impose sanctions for prosecutorial misconduct involving nondisclosure of exculptory evidence, there must be a showing both of willful misconduct and prejudice.

Furthermore, ordinarily, the Third Circuit stated in Fahie, the proper remedy is retrial: "While retrial is normally the most severe sanction available for a Brady violation, where a defendant can show both willful misconduct by the government, and prejudice, dismissal may be proper."  Id. at 255.  Thus, even if Defendant could demonstrate willful prosecutorial misconduct, in the absence of a demonstration of prejudice, dismissal is not an available option.

4

Similarly, in United States v. Lopez, 271 F.3d 472, 483 (3d Cir. 2001), the Third Circuit considered the question of discovery sanctions in a criminal case. Central to the Court's analysis was the question of prejudice: what harm was done to the defendant by the violation? Id. at 483. The Third Circuit found it especially significant that the defendant did "not attempt to explain how the government's failure resulted in a denial of his right to a fair trial." Id. at 484. In the instant case, Defendant has not even asserted that he has been denied his right to a fair trial, much less persuaded this Court that this is so.

Defendant's latest brief summarizes the basis for Defendant's position that the Government knowingly and willfully concealed evidence. Defendant then lists six subjects on which Mahajan's testimony is sought: 1) his motivations with regard to his letter of February 13, 2012; 2) an explanation of why, with this letter of February 13, 2012, Mahajan sent an incomplete copy of the original recording; 3) an explanation of why the letter of February 13, 2012 did not disclose the fact that the original recording disks had been damaged; 4) Mahajan's motivations for not describing the evidence as Brady or Giglio material; 5) why, at a conference on February 15, 2012, Mahajan did not disclose the fact that the original recording disks had been damaged; and 6) an explanation of the source of a quote in the February 13, 2012 letter. The Court, at this point, regards the effort to examine Mahajan on these issues as a fishing expedition.

At the beginning of this Court's investigation into the Rothbart recording, the question of prosecutorial misconduct was of sufficient concern that this Court held five days of evidentiary hearings. Now, however, this Court is satisfied that these five days of hearings have provided a sufficient inquiry. Defendant has not persuaded this Court that the information he seeks from

Mahajan has any use in his defense, nor to any issue presently before this Court.  The Court is satisfied that the defense has already had a more than ample opportunity to explore this area and that permitting the examination of the Government trial attorney is unlikely to shed any additional light on this issue.

Absent some legal justification for further investigation into the Government's conduct regarding the Rothbart recording, there is no reason to draw out this matter.  If Defendant believes that the evidence before the Court, coupled with the prejudice it asserts it has suffered, warrants sanctions under Lopez, Fahie, Hasting, or United States v. Russell, 411 U.S. 423 (1973), or any other authority, he may submit such an application within ten days of the entry of this Order.  The hearings on this matter are closed, the Government's motion to quash the subpoena issued February 21, 2012 (Docket Entry No. 253) is granted, and Defendant's subpoena of Mahajan is hereby quashed.

**SO ORDERED.**

     s/ Stanley R. Chesler
Stanley R. Chesler, U.S.D.J

Dated:  June 28, 2012

6